# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: ) | |
| ) | Case No. 13-22736 |
| Ronald F. Pinchott, ) | Chapter 13 |
| ) | Hon. G. Michael Halfenger |
| Debtor. ) | |
| ) | |

## WELLS FARGO BANK, N.A., AND OCWEN LOAN SERVICING, LLC'S RESPONSE TO DEBTOR'S AMENDED MOTION FOR CONTEMPT

Wells Fargo Bank, N.A. ("Wells Fargo") and Ocwen Loan Servicing, LLC ("Ocwen," and collectively with Wells Fargo, "Creditor"), hereby respond to the above-captioned debtor's ("Debtor") *Amended Motion for Contempt for Violation [sic] the Discharge Order, Bankruptcy Rule 3002.1, 11 U.S.C. Section 534(i) [sic] and Court's Minutes and Order Dated July 20, 2018* (Docket No. 81) ("Amended Motion") as follows:

## INTRODUCTION

In his Amended Motion, the Debtor requests that Wells Fargo and Ocwen be held in contempt of this Court for three principal reasons: (a) they attempted to collect amounts either paid or subject to the Discharge Order; (b) they violated Bankruptcy Rule 3002.1 for attempting to collect on fees, expenses or charges that were never noticed or disclosed to the Debtor; and (c) they violated section 524(i) for willful failure to credit payments received under the confirmed plan. *See* Amended Motion at p. 1. Each of these claims fails because any amounts for which Creditor seeks repayment were not discharged, and any notice requirements pursuant to Rule 3002.1 cease to apply upon entry of an order terminating the automatic stay.

## BACKGROUND

1. On March 12, 2013, the Debtor commenced this case ("Bankruptcy Case") when he filed a voluntary petition for relief pursuant to chapter 13 of Title 11 of the United States

1

Code ("Bankruptcy Code"). (Dkt. 1.) The Debtor owned and resided in the real property located at W59N744 Highwood Dr., Cedarburg, WI 53012-1459 ("Property"). Dkt. 8 at p. 3. The Property is, and at all relevant times, has been subject to a first lien serviced by Ocwen. *Id.* at p. 9; Claim No. 4-1 ("Proof of Claim").

2. On March 25, 2013, the Debtor filed his chapter 13 plan (Dkt. 9) ("Original Plan"), whereby he proposed to cure the pre-petition arrearage owning on the debt secured by the Property over 60 months and make ongoing post-petition payments directly to Creditor. The Debtor later amended the Original Plan to provide, *inter alia*, that the payments to Creditor would be consistent with the Proof of Claim (Dkt. 20). On September 6, 2013, the Court entered an order confirming the modified plan (Dkt. 27) (as amended and confirmed, the "Plan").

3. Subsequent to confirmation, the Debtor fell behind on his post-petition obligations to Creditor, and on February 1, 2018, Creditor filed a Motion for Relief from Stay (Dkt. 45) ("Stay Relief Motion"). With no timely response filed in opposition, the Court entered an order granting Creditor relief from the automatic stay on February 27, 2018 (Dkt. 47) ("Stay Relief Order").

4. The Debtor filed a late objection to the Stay Relief Motion after entry of the Stay Relief Order (Dkt. 48) but, notably, did not seek to vacate the Stay Relief Order.

5. On March 30, 2018 ("Plan Completion Date"), the Chapter 13 Trustee filed the Notice of Completion of Plan (Dkt. 50) and the Notice of Final Cure ("Notice of Final Cure") pursuant to Rule 3002.1 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

6. On April 20, 2018, Ocwen responded to the Notice of Final Cure, indicating that the Debtor was not current on his post-petition payments as of the Plan Completion Date. *See*

*generally*, Claims Register Details related to Claim 4-1. The Debtor acknowledged falling behind on post-petition payments. Dkt. 56.

7. On July 19, 2018, this Court held a hearing on whether the Debtor had satisfied all requirements under the Plan necessary to obtain a discharge. Dkt. 63. Having found that the Debtor was current as of the Plan Completion Date,[1] the Court stated it would grant the Debtor his discharge if all other requirements for the discharge were met. *See* Court Minutes and Order, Dkt. 64 ("July 19 Minutes"). On July 24, 2018, the Debtor obtained his discharge (Dkt. 66) ("Order of Discharge").

## ARGUMENT

8. Section 1328(a) of the Bankruptcy Code provides, in relevant part, that a debtor shall obtain a discharge "of all debts provided for by the plan … , except any debt (1) provided for under section 1322(b)(5)." 11 U.S.C. §1328(a).

9. Section 1322(b)(5) of the Bankruptcy Code allows a debtor's plan to, "… provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." In other words, the debt described in this section refers long term debt where the maturity extends past the completion of the plan.

10. The maturity date of the Creditor's claim secured by the Property is October 1, 2033. *See* Proof of Claim. And since that maturity date extends beyond the Plan Completion

---

[1] At the July 19, 2018 hearing, Creditor's counsel represented that the Debtor was current through the Plan Completion Date of March 30, 2018. To the extent that any statements sent to the Debtor following the Plan Completion Date reference payments due and owing from December 1, 2017, Creditor is investigating this discrepancy and will resolve it in favor of the Debtor, consistent with any representations that the Debtor was current through the Plan Completion Date. Creditor maintains its position that any amounts due and owing after the Plan Completion Date remain beyond the scope of the Discharge Order and therefore not subject to section 524 of the Bankruptcy Code.

Date, the Creditor's claim at issue is the long-term debt that is provided for under section 1322(b)(5) and expressly excluded from the scope of any discharge provided for in section 1328(a) of the Bankruptcy Code.

11. Indeed, the Discharge Order entered in this Bankruptcy Case explains that some debts are not discharged, such as "debts provided for under 11 U.S.C. §1322(b)(5) and on which the last payment or other transfer is due after the date on which the final payment under the plan was due." Dkt. 66.

12. Despite the fact that section 524 of the Bankruptcy Code is wholly inapplicable to the Creditor's claim by operation of the express terms of section 1328(a), the Debtor claims that the Creditor violated section 524(i) of the Bankruptcy Code by failing to apply payments pursuant to the terms of the Plan. However, any communications sent to the Debtor seeking to collect outstanding amounts accrued after the Plan Completion Date are outside the scope of the Plan and, necessarily, outside the express scope of section 524(i) of the Bankruptcy Code.

13. To the extent section 524(i) even applies to the Creditor's attempt to collect amounts accrued after the Plan Completion Date (which it does not), that section also requires a showing of "material injury to the debtor" caused by the failure to apply payments in accordance with the Plan. The Debtor dedicates one sentence to his ten-page brief listing generic injuries that he allegedly suffered in the two month period following entry of the Discharge (July 24, 2018) and his filing of the Motion to Reopen (September 27, 2018), which brought a halt to any alleged collection proceedings. The lack of an alleged "material injury" means any claim under section 524(i) fails on its face.

14. Further, the July 19 Minutes simply memorialize the hearing held on the same date, whereby the Creditor reported that the Debtor completed all payments under the Plan

through the Plan Completion Date. Dkt. 64. The July 19 Minutes also indicate that the Court would grant the discharge if the Debtor meets all other discharge requirements. *Id.* Any amounts due and owing after the Plan Completion Date for which the Creditor sought repayment are outside the scope of the July 19 Minutes.

15. The Debtor also alleges that Creditor violated Rule 3002.1 by attempting to collect amounts that were not disclosed to the Debtor during the Bankruptcy Case. Rule 3002.1 states,

> (a) IN GENERAL. This rule applies in a chapter 13 case to claims (1) that are secured by a security interest in the debtor's principal residence, and (2) for which the plan provides that either the trustee or the debtor will make contractual installment payments. *Unless the court orders otherwise, the notice requirements of this rule cease to apply when an order terminating or annulling the automatic stay becomes effective with respect to the residence that secures the claim.*"

Fed. R. Bankr. P. 3002.1(a) (emphasis added).

16. Creditor obtained relief from the automatic stay on February 27, 2018, rendering inapplicable any notice requirements outlined by Rule 3002.1. Therefore, the Debtor's allegations that the Creditor is seeking to collect any amounts not noticed pursuant to Rule 3002.1 necessarily fail.

17. Finally, while the Debtor failed to plead any "material injury" caused by any alleged actions to collect a non-discharged claim, the Debtor also asks for the imposition of punitive damages. In order to state a claim for punitive damages under section 105 of the Bankruptcy Code, the Court must first find knowing and willful violations of the discharge injunction under section 524. *See In re Michael Bahary & Steven Bahary P'ship*, 528 B.R. 763, 767-68 (Bankr. N.D. Ill. 2015). Before contempt or a sanction can be issued, "[a]t a minimum, the court must be sure of both the factual and legal basis on which it is acting." *Trade Well*

*International*, 778 F.3d 620, 2015 WL 535341, at *6. The burden is on the debtor "to establish by clear and convincing evidence that creditor violated the post-discharge injunction." *In re Pincombe*, 256 B.R. 774, 782 (Bankr. N.D. Ill. 2000).

18. Even if section 524 of the Bankruptcy Code were applicable here (which it is not), the Debtor has not sufficiently pled any facts indicating that the Creditor's actions were in knowing and willful violation of the discharge, beyond parroting the text of section 524(i), which uses the word "willful" in the language of the statute. Accordingly, any request for punitive damages is without merit and should be denied.

## CONCLUSION

For the reasons stated herein, Wells Fargo and Ocwen respectfully request that the Court deny the Amended Motion and grant the Creditor any other relief that is just under the circumstances.

Dated: November 30, 2018

Respectfully Submitted,

/s/ Maria A. Diakoumakis
Maria A. Diakoumakis (IL 6289309)
Dykema Gossett PLLC
10 S. Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 627-2132
mdiakoumakis@dykema.com
*Counsel to Wells Fargo Bank, N.A. and Ocwen Loan Servicing, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2018, I electronically filed the foregoing *Wells Fargo Bank, N.A., and Ocwen Loan Servicing, LLC's Response to Debtor's Amended Motion for Contempt* with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys on that system.

/s/ Maria A. Diakoumakis
Maria A. Diakoumakis (IL 6289309)
Dykema Gossett PLLC
10 S. Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 627-2132
mdiakoumakis@dykema.com
*Counsel to Wells Fargo Bank, N.A. and Ocwen Loan Servicing, LLC*